ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL X**

| | | |
|---|---|---|
| **LYNNETTE ROSADO LARACUENTE**<br>DEMANDANTE(S)-PETICIONARIA(S)<br><br>**V.**<br><br>**DR. GUSTAVO E. BELLO ROJAS; ETC.**<br>DEMANDADA(S)-RECURRIDA(S) | **KLCE202400385** | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **MAYAGÜEZ**<br><br>Caso Núm.<br>**ISCI201601054 (405)**<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

**R E S O L U C I Ó N**

En San Juan, Puerto Rico, hoy día 9 de mayo de 2024.

Comparece ante este Tribunal de Apelaciones, la señora **LYNNETTE ROSADO LARACUENTE** (señora **ROSADO LARACUENTE**) mediante *Petición de Certiorari* incoada el 3 de abril de 2024. En su recurso, nos solicita que revisemos la *Resolución y Orden* decretada el 27 de febrero de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Mayagüez.[1] Mediante la aludida determinación, el foro *a quo* dispuso que "el juicio continúa presencial, según pautado". Lo anterior, en respuesta a la *Moción Solicitando Que Se Permita Testimonio de Perito de Manera Remota* presentada el 5 de febrero de 2024 por la señora **ROSADO LARACUENTE**.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Dicho dictamen judicial fue notificado y archivado en autos el 4 de marzo de 2024. Véase Apéndice de la *Petición de Certiorari*, págs. 152- 153.

Número Identificador: RES2024_____

- I -

El 3 de octubre de 2016, la señora ROSADO LARACUENTE instó *Demanda* sobre daños y perjuicios por impericia médica.[2] Alegó que se sometió a un procedimiento de cirugía estética con el DR. GUSTAVO E. BELLO ROJAS (DR. BELLO ROJAS) en el MAYAGÜEZ MEDICAL CENTER DR. RAMÓN EMETERIO BETANCES, INC. (MAYAGÜEZ MEDICAL CENTER).[3] Expuso que la cirugía consistió en un aumento y levantamiento de glúteos (*"gluteal augmentation"* & *"buttock lift"*) y la transferencia de grasa (*"fat transfer"*). Manifestó que al cabo de diez (10) días del procedimiento médico, acudió a su cita de seguimiento, y allí le realizaron un proceso de reparación de herida o *"wound repair"*; dado que en el área de la incisión de la cirugía se acumuló fluido (*"serum"*).

Explicó la señora ROSADO LARACUENTE que continuó asistiendo a sus citas de seguimiento y siguió presentando secreciones en el área de la herida, lo cual el cirujano catalogó como una infección menor o *"low grade infection"*. Dada esas circunstancias, la señora ROSADO LARACUENTE le exteriorizó su preocupación sobre los implantes.

Enunció que el 3 de junio de 2015, fue sometida a una segunda cirugía. En esa ocasión, para la reposición de nuevos implantes y el procedimiento de *"capsulorraphy"*. A pesar de ello, continuaba con secreciones, tenía dolor en el área de la herida; y le surgió una erupción en la contusión y en el inter-glúteos. Así, el 22 de diciembre de 2015, se le realizó una tercera cirugía, mediante la cual le removieron los implantes de glúteos.

Tiempo después, el 20 de enero de 2017, el DR. BELLO ROJAS presentó su *Contestación a Demanda* negando las alegaciones en su contra y presentó sus *Defensas Afirmativas*.[4] El 10 de febrero de 2017, MAYAGÜEZ MEDICAL

---

[2] Véase Apéndice de la *Petición de Certiorari*, págs. 1- 5.
[3] El procedimiento de cirugía de estética se llevó a cabo el 16 de enero de 2015.
[4] Véase Apéndice de la *Petición de Certiorari*, págs. 6- 10.

**CENTER** presentó su *Contestación a Demanda* negando también la mayoría de las alegaciones y formulando sus *Defensas Afirmativas*.[5]

El 28 de febrero de 2017, la señora **ROSADO LARACUENTE** presentó una *Primera Demanda Enmendada*.[6] Ello para incluir a **PUERTO RICO MEDICAL DEFENSES INSURANCE COMPANY (PUERTO RICO MEDICAL)**, como aseguradora del **DR. BELLO ROJAS**.

Varios días después, el 7 de marzo de 2017, **MAYAGÜEZ MEDICAL CENTER** presentó su *Contestación a Demanda Enmendada*.[7] El 24 de abril de 2017, la señora **ROSADO LARACUENTE** presentó *Solicitud de Autorización para Presentar "Segunda Demanda Enmendada"* acompañada de su *Segunda Demanda Enmendada*.[8] Argumentó que, durante el proceso de descubrimiento de prueba, revisó el expediente médico y no surgía un consentimiento informado. Más tarde, el 12 de mayo de 2017, la aseguradora **PUERTO RICO MEDICAL** presentó su *Contestación a Segunda Demanda Enmendada*.[9] Ese mismo día, el **DR. BELLO ROJAS** y **PUERTO RICO MEDICAL** presentaron *Contestación a Segunda Demanda Enmendada*.[10] A los pocos días, el 17 de mayo de 2017, la señora **ROSADO LARACUENTE** interpuso su *Tercera Demanda Enmendada*.[11]

El 5 de junio de 2017, **MAYAGÜEZ MEDICAL CENTER** presentó su *Contestación a Segunda Demanda Enmendada*.[12] Posteriormente, el 20 de julio de 2017, el **DR. BELLO ROJAS** y su aseguradora **PUERTO RICO MEDICAL** presentaron *Enmienda a Contestación a Segunda Demanda Enmendada*.[13] El 7 de noviembre de 2017, **MAYAGÜEZ MEDICAL CENTER** presentó su *Contestación Enmendada a Segunda Demanda Enmendada*.[14]

---

[5] Véase Apéndice de la *Petición de Certiorari*, págs. 11- 15.
[6] *Íd.*, págs. 16- 20.
[7] *Íd.*, págs. 21- 26.
[8] *Íd.*, págs. 27- 34.
[9] *Íd.*, págs. 35- 39.
[10] *Íd.*, págs. 54- 59.
[11] *Íd.*, págs. 40- 46.
[12] *Íd.,* págs. 54- 59.
[13] *Íd.*, págs. 60- 65.
[14] *Íd.*, págs. 66- 72.

Luego de varios trámites legales, el 15 de agosto de 2018, el **DR. BELLO ROJAS** y su aseguradora **PUERTO RICO MEDICAL** presentaron su *Contestación a Tercera Demanda Enmendada*.[15] Tiempo después, el 15 de enero de 2019, **MAYAGÜEZ MEDICAL CENTER** presentó su *Contestación Enmendada a Tercera Demanda Enmendada*.[16] Unos días después, el 19 de enero de 2023, se celebró la *Conferencia con Antelación al Juicio* mediante videoconferencia.[17] Finalmente, el 13 de noviembre de 2023, se presentó el *Informe Preliminar entre Abogados Enmendado*.[18]

Pasado algún tiempo, el 5 de febrero de 2024, la señora **ROSADO LARACUENTE** presentó *Moción Solicitando Que Se Permita Testimonio de Perito de Manera Remota* arguyendo, en síntesis, que se debe permitir que el doctor Eugene J. Strasser, su perito, pueda prestar testimonio mediante videoconferencia.[19] El 14 de febrero de 2024, **MAYAGÜEZ MEDICAL CENTER** presentó su *Oposición a Testimonio Pericial por Videoconferencia*.[20] Argumentó, entre otras cosas, que la señora **ROSADO LARACUENTE** conocía desde hacía mucho tiempo el costo económico de su acuerdo pericial con el doctor Strasser; se podría coordinar fecha para el testimonio pericial del doctor Strasser; la posibilidad de contratiempos técnicos del testimonio virtual afectarían la presentación de evidencia o prueba; y en el balance de los intereses de las partes no procedía dicha solicitud. Oportunamente, el 26 de febrero de 2024, la señora **ROSADO LARACUENTE** presentó escrito intitulado *Réplica a "Oposición a Testimonio Pericial por Videoconferencia"*.[21] Subsiguiente, el 27 de febrero de 2024, se dictaminó la *Resolución y Orden* recurrida.

---

[15] Véase Apéndice de la *Petición de Certiorari*, págs. 73- 78.
[16] *Íd.*, págs. 79- 84.
[17] *Íd.*, págs. 133- 134.
[18] *Íd.*, págs. 85- 132.
[19] Cabe mencionar que el perito es el Dr. Eugene J. Strasser, cirujano plástico residente de Florida, Estados Unidos. Véase Apéndice de la *Petición de Certiorari*, págs. 135- 144.
[20] *Íd.*, págs. 145- 147.
[21] *Íd.*, págs. 148- 151.

Insatisfecha con ese proceder, el 3 de abril de 2024, la señora **ROSADO LARACUENTE** recurrió, ante este foro revisor señalando el(los) siguiente(s) error(es):

> Erró el Honorable Tribunal de Primera Instancia al no permitir el testimonio del perito de la peticionaria de manera virtual.

El 5 de abril de 2024, pronunciamos *Resolución* en la cual, entre otras cosas, concedimos un plazo de diez (10) días para mostrar causa por la cual no debamos expedir el auto de *certiorari* y revocar el dictamen impugnado. El 12 de abril de 2024, **MAYAGÜEZ MEDICAL CENTER** presentó su *Oposición a la Expedición del Auto de Certiorari*. El mismo día, el **DR. BELLO ROJAS** y **PUERTO RICO MEDICAL** presentaron *Alegato de la Parte Recurrida en Oposición a Certiorari*.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de todas las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

– A –

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial.[22] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[23]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[24] Empero, el ejercicio de la discreción concedida "no implica la potestad de

---

[22] *Rivera Gómez v. Arcos Dorados Puerto Rico Inc.*, 2023 TSPR 65; 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[23] *Íd.*
[24] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).

actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[25]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[26] La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, injunctions de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[27] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia. [28]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[29]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[30] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

---

[25] *Íd.*

[26] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez*, supra.

[27] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).

[28] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

[29] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra*.

[30] *Íd.*

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[31]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[32] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[33] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*. La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[34]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[35] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho

---

[31] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[32] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).
[33] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).
[34] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra*.
[35] *García v. Asociación*, 165 DPR 311, 322 (2005).

sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[36]

– B –

El funcionamiento efectivo de nuestro sistema judicial y la pronta disposición de los asuntos litigiosos hacen necesario que los(las) jueces de instancia ostenten gran flexibilidad y discreción para lidiar diariamente con el manejo y la tramitación de los asuntos judiciales.[37] Ello presupone que se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique.[38] En ese sentido, el foro primario tiene el deber ineludible de garantizar que los procedimientos se ventilen sin demora, con miras a que se logre una justicia rápida y eficiente.[39]

Como norma general, los foros revisores no intervendrán con el manejo del caso ante la consideración del tribunal primario.[40] El Máximo Foro ha manifestado que los tribunales apelativos no debemos intervenir con determinaciones decretadas por el foro primario y sustituir el criterio utilizado en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con perjuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto.[41] Ello implica que el ejercicio adecuado de la discreción se relaciona de manera estrecha con el concepto de razonabilidad.[42]

– III –

La señora ROSADO LARACUENTE recurre ante este Tribunal de Apelaciones punteando que el foro primario incidió al no permitir el testimonio de su perito, Dr. Strasser, de manera virtual. Aseguró que la

---

[36] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[37] *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, 2023 TSPR 145, 212 DRR ___ (2023).
[38] *In re Collazo I*, 159 DPR 141, 150 (2003).
[39] *In re Pagani Padró*, 181 DPR 517, 529 (2011); *Vives Vázquez v. E.L.A.*, 142 DPR 117 (1996).
[40] *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).
[41] *Íd.*
[42] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

política pública del Poder Judicial ha promovido la implementación del sistema de videoconferencia en los procedimientos judiciales.

Por su parte, **MAYAGÜEZ MEDICAL CENTER** señaló en su oposición que a menos de dos (2) meses para la celebración del juicio, la señora **ROSADO LARACUENTE** manifestó su solicitud de que Dr. Strasser, su perito, testifique mediante videoconferencia. Añadió que, tal petición es tardía toda vez que se habían celebrado unas cinco (5) conferencias con antelación al juicio y ello no fue traído a la atención del tribunal. Asimismo, planteó que el Dr. Starsser deberá testificar sobre varios expedientes médicos (carpetas físicas) y necesitará un traductor, lo cual dificulta el proceso de la presentación de la prueba en el juicio.

Por otro lado, el **DR. BELLO ROJAS** y **PUERTO RICO MEDICAL** sostienen que, de manera tardía, la señora **ROSADO LARACUENTE** presentó su moción solicitando que se permita el testimonio del Dr. Strasser, su perito, de manera remota. Ello, dado que se había celebrado la Conferencia con Antelación al Juicio, se aprobó el informe de conferencia preliminar y no se hizo alusión a dicho petitorio. Agregó que el caso es uno complejo que plantea aspectos técnicos de la medicina; el Dr. Strasser no conoce el español; y se estableció la necesidad de un intérprete al momento de su testimonio.

Habida cuenta de que el recurso ante nuestra consideración se trata de una *Petición de Certiorari*, este Tribunal de Apelaciones debe determinar, como cuestión de umbral, si procede su expedición. Es sabido que un tribunal intermedio no intervendrá con el ejercicio de la discreción (manejo de sala) de los Tribunales de Primera Instancia, salvo que se demuestre que hubo un craso abuso de discreción, o actuó con prejuicio o parcialidad, o se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y nuestra intervención en esa etapa evitará un perjuicio sustancial.

La señora **ROSADO LARACUENTE** no ha demostrado que el foro de instancia actuó con pasión, prejuicio, parcialidad o que incurrió en error manifiesto. Nada en el expediente nos convenció para utilizar nuestra función revisora en esta etapa de los procedimientos. Sus planteamientos no nos mueven a inmiscuirnos en el manejo del caso o en la discreción del(de la) juez quien preside la sala. De igual modo, no vislumbramos error alguno en la *Resolución* recurrida que precise nuestra intervención.

Aquilatamos que, con esta decisión, no hemos prejuzgado los méritos de la controversia, por lo que las partes conservan su derecho de presentar nuevamente estos y otros señalamientos, de entender necesario, en un recurso apelativo posterior.

– **IV** –

Por los fundamentos antes expuestos, ***denegamos*** la expedición del auto de *Certiorari* interpuesto el 3 de abril de 2024. En consecuencia, deberá proseguirse con los procedimientos ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez: **juicio en su fondo para los días 13, 14, 15, 16, 22, 23 y 24 de mayo de 2024**.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones